***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT B. LAROQUE,<br><br>       Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security[1],<br><br>       Defendant. | Civil Action No. 20-13003 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Before the Court is an appeal filed by Robert B. Laroque[2] ("Plaintiff") seeking review of an Administrative Law Judge's decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). After reviewing the Administrative Record, the Court **VACATES** the Commissioner's decision and **REMANDS** for further administrative proceedings consistent with this Opinion.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a 45-year-old man who suffers from orthopedic, neurological and psychiatric conditions, as well as hepatitis C. (ECF No. 1 ¶5; Administrative Record ("A.R.") 33, 230.)

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

[2] The Court notes that medical records spell Plaintiff's name "Robert B. Larocque." (Administrative Record ("A.R.") 1330-40.) However, because Plaintiff's Complaint indicates that Plaintiff's name is spelled "Robert B. Laroque," (ECF No. 1.) the Court will use that spelling of Plaintiff's name in this Opinion.

1

Plaintiff applied for SSI on January 3, 2017,[3] alleging disability as of that date.[4] (ECF No. 1 ¶6; A.R. 195-201.) Prior to Plaintiff's alleged disability, Plaintiff graduated from high school and worked as a mechanic, welder, and tattoo artist. (A.R. 33-38.) Plaintiff's application was denied initially and upon reconsideration. (A.R. 98-102, 108-110.) Following these denials, Plaintiff requested a hearing, which occurred on July 11, 2019, before Administrative Law Judge Dennis O'Leary ("ALJ"). (A.R. 27-66.) On July 24, 2019, the ALJ issued a decision finding that Plaintiff is not disabled as defined by the Act, on the ground that Plaintiff could perform other jobs that exist in significant numbers in the national economy at step five of the sequential evaluation. (A.R. 9-26.) Plaintiff sought review from the Appeals Counsel, and on July 21, 2020, the Appeals Counsel denied Plaintiff's request for review. (A.R. 194, 1-6.) Afterwards, Plaintiff filed the instant appeal on September 22, 2020. (ECF No. 1.)

        **A.**     **Review of the Medical Evidence**

            *i.*     *Physical Impairments*

Plaintiff's primary care physician, Dr. Marek Lupicki, M.D., treated Plaintiff on and off from August 26, 2005 through June 2019.[5] (A.R. 1331, 1337, 1467.) In a March 2017 general medical report prepared at the request of the agency, Dr. Lupicki described Plaintiff's medical history, noting Plaintiff's long history of lower back pain, anxiety and Hepatitis C. (A.R. 1331.) An MRI from 2010 of the lumbar spine showed anterolisthesis of the lumbosacral joint, LF-S1.

---

[3] Plaintiff's date of birth is November 7, 1976. (A.R. 33.) Plaintiff is considered to be a "younger person" since he was under the age of 50 years old when he applied for SSI. *See* 20 CFR 404.1563(c).
[4] The Court notes that Plaintiff previously received SSI from 2008 through 2014. Plaintiff's SSI was terminated in 2014 as a result of Plaintiff's incarceration for more than 12 months. (A.R. 49.) *See* 20 C.F.R. § 416.1335.
[5] Prior to the onset of his alleged disability, prison release records show that Plaintiff had the following medical problems upon release from prison in December 2017: hepatitis C, right knee deformities, degenerative joint disease of the lumbar spine, and stenosis. (A.R. 323-24.)

(A.R. 1331, 1349-50.) Under the report's section on residual functional capacity, Dr. Lupicki checked off that Plaintiff could occasionally (up to 1/3 of a workday) lift and carry up to 20 pounds; stand and/or walk up to two hours per day and sit less than six hours a day. (A.R. 1332.) Dr. Lupicki noted that Plaintiff was limited with pushing and pulling due to back pain and indicated that Plaintiff's generalized anxiety disorder limited Plaintiff's ability to do work related activities. (*Id*.) On a range of motion chart, Dr. Lupicki reported limited range of motion of the lumbar spine with straight leg raise to 60 degrees bilaterally. (A.R. 1334-36.) However, Dr. Lupicki also indicated that Plaintiff could walk at a reasonable pace and did not use a hand-held assistive device. (A.R. 1335.)

At a May 2017 consultive examination with Dr. Arora Deepinder, M.D., Plaintiff complained of stomach problems, including nausea, vomiting, and abdominal pain and stated that he could not work as he could not stand for more than 20-25 minutes due to lower back pain. (A.R. 1360.) Plaintiff reported that he had never had treatment for the Hepatitis C but received pain medications for his musculoskeletal conditions. (*Id*.) On examination, Plaintiff had full (5/5) strength throughout, normal reflexes and intact sensation. (A.R. 1362.) Plaintiff exhibited decreased range of motion in his right knee and lumbar spine, positive crepitus on the right knee, and a positive straight leg test. (*Id*.) Plaintiff could walk on his toes and heels, and tandem walk with a cane but complained of pain in his right knee. (*Id*.) Dr. Deepinder diagnosed Plaintiff with bilateral osteoarthritis with chronic pain; some gross deformity of the right knee post multiple surgeries as indicated by Plaintiff; Hepatitis C; increased blood pressure; and chronic low back pain status post physical therapy and MRI showing ruptured and herniated disc in 2004. (*Id*.)

Agency physician, Dr. Arthur Pirone, M.D., also evaluated Plaintiff in May 2017. (A.R. 75-77.) In Dr. Pirone's residual functional capacity assessment of Plaintiff, he opined that Plaintiff

3

could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk 4 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and push and/or pull an unlimited amount consistent with the lift and/or carry restriction. (A.R. 76). Dr. Pirone also determined that Plaintiff was limited to only occasional postural activities, but he had no manipulative, visual, communicative, or environmental limitations. (A.R. 76-77.) Agency physician Dr. Hortensia Kelly, M.D., reported the same findings as Dr. Pirone during a reevaluation of Plaintiff's RFC on August 8, 2017. (A.R. 91-92.)

In May 2017, Plaintiff also underwent additional x-rays. X-rays of the lumbar spine showed moderate degree of spondylolisthesis at L5-51; disk degenerative changes at L4-L5 and L5-SI and possible pars defects. (A.R. 1359.) X-rays of the right knee showed no acute fracture, but tricompartmental osteoarthrosis, most advanced in the medial articular compartment. (A.R. 1358.)

On April 21, 2018, Plaintiff visited internist Dr. Inga Friedman, M.D., with the objective of renewing his participation in New Jersey's medical marijuana program. Dr. Friedman's notes indicate that Plaintiff appeared sick, anxious, upset, and irritable. (A.R. 1431.) On examination, Dr. Friedman reported bilateral leg swelling, neck tenderness, and low back stiffness, as well as bilateral crackles over both lung bases and severe deformity of the right knee. (*Id*.)

        *ii.*    *Mental Impairments*

Plaintiff also has a history of mental health impairments, including depression and anxiety. Prison records from 2016 showed that Plaintiff suffered from major depressive disorder, panic disorder without agoraphobia, polysubstance dependence and borderline personality disorder upon release. (A.R. 1322.) In March 2017, Plaintiff underwent a psychiatric evaluation with Dr. Leonard Eng, M.D. (A.R. 1415.) Plaintiff reported to Dr. Eng that he was reapplying for social

security disability benefits and that his primary care physician had prescribed him Alprazolam and Oxycodone. (*Id*.) On examination, Dr. Eng found Plaintiff to be alert and attentive with normal speech, normal motor behavior, intact thought processes, and no abnormal thought content. (A.R. 1416.) However, Plaintiff also appeared depressed and anxious, and exhibited limited insight and judgment. (*Id*.) Dr. Eng diagnosed Plaintiff with major depressive disorder, opioid use disorder, and sedative, hypnotic, or anxiolytic use disorder and prescribed Plaintiff Wellbutrin. (A.R. 1417.)

On May 18, 2017, consultive examiner Dr. Zulfiqar Rajput, M.D., assessed Plaintiff with chronic pain, polysubstance dependency, generalized anxiety disorder, and major depressive disorder, NOS. (A.R. 1367.) On examination, Dr. Rajput noted that Plaintiff walked with a cane and described Plaintiff as calm, cooperative, alert, and oriented to person, place, month, and year. (A.R. 1366.) Plaintiff refused to do serial sevens and claimed that he was unable to spell table forward and backwards. (*Id*.) Dr. Rajput scored Plaintiff's immediate recall as 3/3 but noted that Plaintiff could not recall anything out of three after five minutes. (*Id*.) Plaintiff's long-term memory was intact. (*Id*.) Dr. Rajput opined that Plaintiff's insight and judgment is poor because Plaintiff did not take any responsibility for his actions. (*Id*.) Plaintiff reported that he shared household activities such as dishes, housecleaning, and shopping with his family. (*Id*.) For enjoyment, Plaintiff noted that he read magazines, watched cartoons, and played video games. (*Id*.) In his assessment, Dr. Rajput recommended that Plaintiff's pain medications be adjusted and that his Xanax prescription be stopped. (A.R. 1367.)

On May 22, 2017, Plaintiff visited Dr. Eng for a follow-up appointment, reporting that his spine pathology had worsened, and his past incarceration was emotionally traumatic. (A.R. 1419.) A mental status examination showed Plaintiff to be alert, engaged, and cooperative with normal speech, intact concentration, intact memory, and goal directed and organized thought processes,

5

no abnormal thought content, and fair insight and judgment. (A.R. 1419-20.) Dr. Eng also marked Plaintiff's mood as anxious and depressed, but euthymic. (A.R. 1419.). Dr. Eng increased Plaintiff's Wellbutrin prescription and advised him to return in two months. (A.R. 1421)

On May 30, 2017, state agency psychological consultant, James Mendelson, Ph.D., completed a mental residual functional capacity assessment. (A.R. 77-78.) Dr. Mendelson opined that Plaintiff was capable of comprehending and remembering both uncomplicated, and to some extent, even more complex vocational instructions, procedures, and systems, and attending and persisting for two-hour intervals while accomplishing straightforward job tasks. (*Id*.) However, Dr. Mendelson found that Plaintiff would be best served in a work environment that deemphasized social interactions, made modest demands on social skills, limited social encounters to brief interchanges on superficial levels, and provided firm supervision with very clear expectations. (A.R. 78) On August 11, 2017, state agency consultant, Sharon Flaherty, Ph.D., reaffirmed the same findings. (A.R. 92-94.)

From January 5, 2017, through at least July 8, 2019, Plaintiff received mental health treatment at George J. Otlowski, Sr. Center for Mental Health Care. (A.R. 1475.) In March 26 and July 8, 2019 letters, social worker Keven Collery, LCSW, indicated that Plaintiff was compliant with all treatment recommendations and his diagnoses included moderate major depressive disorder, moderate opioid use disorder, moderate cannabis use disorder, and mild sedative, hypnotic, or anxiolytic use disorder. (A.R. 1475, 1479.)

On May 31, 2018, therapist Robert E. Golski, M.A., LPC, at George J. Otlowski Senior Center for Mental Health Care, completed a check-box assessment of mental ability to do work related activities. (A.R. 1482.) With respect to making occupational adjustments, Mr. Golski checked boxes suggesting that Plaintiff had "fair" ability to follow work rules, use judgment, and

6

function independently, but "poor/no[]" ability relate to co-workers, deal with the public, interact with supervisors, deal with work stress, and maintain attention/concentration. (A.R. 1482-83.) Concerning performance adjustments, Mr. Golski marked that Plaintiff had "fair" ability to understand, remember and carry out simple job instructions, but "poor/no[]" ability to perform the same for complex instructions. (A.R. 1483.) As for social adjustments, Plaintiff had "fair" ability to maintain personal appearance but "poor/no[]" ability to behave in an emotionally stable manner, relate predictability in social situations, or demonstrate reliability. (*Id.*) The assessment was based on Plaintiff's behavior in therapy sessions. (*Id.*)

### B. Review of Testimonial Record

#### i. *Plaintiff's Testimony*

At the July 11, 2019 hearing before ALJ Dennis O'Leary, Plaintiff testified that he last worked in 2016, as head of the maintenance department at Northern State Prison, where he was imprisoned for receiving stolen property and burglary. (A.R. 34.) Plaintiff further testified that before going to prison in 2014, he worked as a mechanic and licensed tattoo artist and piercing artist. (A.R. 36-38.) However, Plaintiff also testified that he received SSI for orthopedic reasons from approximately 2008 through his incarceration in 2014. (A.R. 50.) When asked to describe his medical problems, Plaintiff testified that he suffers from Crohn's disease, IBS, colitis, polyps in his colon and prostate, fused discs from L1 to S1 of his spine, Hepatitis C, anxiety, and depression. (A.R. 39-46.) Plaintiff testified that his doctors have prescribed him medical marijuana and Xanax to treat his IBS and anxiety, and that he receives methadone from a clinic for his pain. (A.R. 39-45.) Plaintiff denied having had surgery or epidural injections for his back, but stated that he had had five operations on his knee that "literally almost killed [him]." (A.R. 43.) Plaintiff testified that he walks with a cane prescribed by his doctor to prevent his knee from

swelling while walking.  (A.R. 53-54.)  However, Plaintiff reported that he could stand so long as he holds onto something and only experiences pain on the right side of his back while sitting. (A.R. 54-55.)  Regarding his anxiety, Plaintiff testified that he felt like he was "being crushed," during the hearing and could not breathe, but denied ever having been hospitalized.  (A.R. 44.)

With respect to daily activities, Plaintiff testified that he drives but only goes out in public to attend his methadone program.  (A.R. 44, 47-48.)  Plaintiff testified that he lives with his grandmother and helps her around the house and with her medications.  (A.R. 47.)  Apart from his grandmother, Plaintiff socializes with his aunt and one friend.  (A.R. 55.)  To support himself, Plaintiff stated that his grandmother lends him money.  (A.R. 48.)

       ii.   *Vocational Expert's Testimony*

Vocational Expert, Tanya Edghill (the "VE"), also testified at the hearing.  Using the Dictionary of Occupational Titles ("DOT"), the VE classified Plaintiff's past work as "auto mechanic" (DOT code 620.261-030), a medium exertion job and "tattoo artist" (DOT code 339.571-010), a sedentary position.  (A.R. 58.)  Both jobs have SVP skill levels of five.  The ALJ asked the VE to consider an individual of Plaintiff's "age, education, and work history" but assume that such individual is restricted to sedentary work that is simple and repetitive in nature.  (A.R. 59.)  The ALJ further directed the VE to assume that the individual would be restricted to jobs that involve limited contact with supervisors and coworkers and no contact with the public.  (*Id*.)  Last, the ALJ specified that the hypothetical individual would be restricted to work that does not involve working at heights or around heavy machinery.  (*Id*.)  Starting with these limitations, the ALJ asked the VE whether the individual could perform any of Plaintiff's past relevant work.  (*Id*.)  The VE testified that although the individual could not perform any of Plaintiff's past relevant work, other simple, sedentary jobs met the limitations.  (*Id*.)  Specifically, the VE opined that

"assembler," "table worker," and "preparer," sedentary jobs with SVP levels of two, met the hypothetical. (A.R. 59-60.) The ALJ then asked whether, assuming the same limitations, any jobs would be available in the national economy if the individual would be off-task 15 percent or more of the workday or unable to present for work three or more days per month for any medical reason. (A.R. 60.) The VE opined that no such jobs would exist under either additional limitation. (*Id*.)

### C. The ALJ Decision

On July 29, 2019, the ALJ issued a written decision analyzing whether Plaintiff satisfied his burden to demonstrate disability under the standard five-step sequential process. (A.R. 12-21.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of January 3, 2017. (A.R. 14.) Second, the ALJ held that Plaintiff had the following severe impairments: back and knee impairments; depression and anxiety; Hepatitis C; and status post substance abuse. (*Id*.)

However, at step three, the ALJ determined that these impairments individually or together did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id*.) First, the ALJ considered listings 1.02 for major dysfunction of a joint and 1.04 for disorders of the spine. (*Id*.) Plaintiff did not meet the criteria of Listing 1.02, because he did not have gross anatomical deformity, chronic joint pain, and stiffness with indications of limited motion or other abnormal motion, as well as joint space narrowing, bony destruction or ankylosis in an affected joint. (*Id*.) The ALJ opined that Plaintiff did not satisfy Listing 1.04 because Plaintiff did not provide evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. (A.R. 14-15.)

Next, the ALJ determined that Plaintiff's mental impairments, considered singly and in combination, did not meet the criteria of listings 12.04 and 12.06. (A.R. 15.) In making this

9

finding, the ALJ considered the "paragraph B" criteria, which are satisfied when the mental impairments result in at least one extreme or two marked limitations in a broad area of functioning. First, in the broad area of understanding, remembering, or applying information, the ALJ found that Plaintiff only had a moderate limitation. (*Id*.) The ALJ acknowledged Plaintiff's reports of trouble with remembering, focus and reading comprehension, but he also cited Plaintiff's statements in the record that he could handle money, read and watch television, perform daily household chores, attend group therapy, play video games, and drive. (*Id*.) Additionally, the ALJ noted Plaintiff's testimony that he cares for his grandmother and her home. (*Id*.)

In the second broad area, interacting with others, the ALJ determined that Plaintiff had a moderate limitation. (*Id*.) In so concluding, the ALJ cited Plaintiff's reported dislike to be around others in person, his socialization by phone and relationship with his girlfriend, and his trouble interacting with authority figures, such as the police. (*Id*.) The ALJ then assessed the third broad area of functioning, ability to concentrate, persist, or maintain pace. Here, the ALJ found that Plaintiff had a moderate limitation, citing the same support in the record as noted above for the ALJ's finding of a moderate limitation in understanding, remembering or applying information. (*Id*.) Finally, the ALJ considered Plaintiff's ability to adapt and manage himself, finding that Plaintiff had a moderate limitation in this broad area. (*Id*.) The ALJ opined that Plaintiff had "little trouble functioning independently" because of Plaintiff's ability to perform self-care and most daily living activities, as well as his attendance at daily appointments and weekly counseling. (*Id*.) Because Plaintiff did not have at least two marked limitations or one extreme limitation, the ALJ held that the "paragraph B" criteria were not met. (*Id*.)

At step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 CFR 416.967(a), except he could have no contact with the public, and only limited

10

contact with coworkers and employees. (A.R. 16.) The ALJ also found that Plaintiff could only perform simple and repetitive tasks, with no work at heights or around heavy machinery. (*Id.*) Based on the RFC finding, the ALJ concluded that Plaintiff could not meet the exertional and non-exertional demands of any past relevant work. (A.R. 20.)

At step five, taking into consideration Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could adjust to other work that exists in significant numbers in the national economy. Specifically, the ALJ relied on the VE's testimony that Plaintiff could perform the job requirements of assembly, table worker and preparer occupations. (A.R. 21.) In sum, the ALJ concluded that Plaintiff was not under a disability as defined in the Act since the application was filed on January 3, 2017. (*Id.*)

## II.     STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant

11

evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924, 113 S. Ct. 1294, 122 L. Ed. 2d 685 (1993).  Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence.  *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements.  *See* 42 U.S.C. § 423(c).  Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...."  42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427.  An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability.  *Id*. at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled.  *See* 20 C.F.R. § 404.1520.  First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity."  *Id*. at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).  If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability

benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id*. A claimant who does not have a severe impairment is not considered disabled. *Id*. at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id*. at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id*. An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §

404.1520(e); *Bowen*, 482 U.S. at 141.  If the claimant can perform past relevant work, the claimant is determined to not be disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42.  The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428.  Finally, if it is determined that the claimant is no longer able to perform his or her past relevant work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience.  20 C.F.R. § 404.1520(f).  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled.  *Id*.

### III. PLAINTIFF'S CLAIMS ON APPEAL

Plaintiff challenges the ALJ's disability determination on two grounds.  First, Plaintiff contends that the RFC was not based on substantial evidence.  Second, Plaintiff argues that the ALJ failed to properly assess Plaintiff's subjective complaints of pain.  The Court addresses each argument in turn.

#### A. Residual Functional Capacity Determination

In reaching a disability determination, an ALJ must evaluate all record evidence.  *Plummer,* 186 F.3d at 433; *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The ALJ's decision must provide "a clear and satisfactory explication of the basis on which it rests" sufficient to permit a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704-05.  Specifically, the ALJ must discuss the evidence that supports the decision and the evidence that the ALJ rejected.  *Id.* at 705-06; *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case ... we do

expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

When an ALJ rejects evidence, he "cannot reject evidence for no reason or the wrong reason." *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Cotter*, 642 F.2d at 706-07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, ... an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted). For claims filed before March 27, 2017,[6] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' reports "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59-60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record.").

---

[6] As previously noted, Plaintiff's claim was filed on January 3, 2017. For claims filed after March 27, 2017, the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a).

15

In the instant case, the Court finds the ALJ's RFC analysis deficient for two reasons: (1) the ALJ misreported and discounted Plaintiff's primary care physician, Dr. Lupicki's opinion, without sufficient explanation, and (2) the ALJ failed to adequately address Plaintiff's use of a cane.

As noted above, the ALJ determined that Plaintiff has the RFC to perform simple, repetitive sedentary work with the following limitations: no contact with the public, limited contact with coworkers and employees, and no work at heights or around heavy machinery. (A.R. 16.) Contrary to the ALJ's determination, Dr. Lupicki's RFC determination included the ability to *sit less than six hours a day*. (A.R. 1332.) Indeed, the ALJ's decision stated that according to Dr. Lupicki's RFC, Plaintiff could "sit for 6 hours" in a typical 8-hour workday. (A.R. 18.) Plaintiff contends that the reporting error is important because Plaintiff's RFC was fixed as "sedentary work," which the Commissioner defines as requiring sitting for "approximately 6 hours of an 8-hour workday" and Plaintiff maintains that he is unable to hold any jobs, even those strictly sedentary in nature. Soc. Sec. Ruling (SSR.) 83-10, 1983 WL 31251, at *5 (S.S.A. 1983). I agree the ALJ erred in assessing Plaintiff's RFC. Although the ALJ afforded little weight to Dr. Lupicki's opinion because "the medical evidence suggest greater mental and physical limitations, particularly with lifting and carrying up to twenty pounds,"[7] the ALJ's clear error calls into question Plaintiff's RFC to do sedentary work. Without the proper analysis or examination of Plaintiff's ability to sit for a particular period of time, the Court cannot determine whether the ALJ appropriately considered Dr. Lupicki's finding that Plaintiff could sit fewer than six hours—the

---

[7] To further illustrate the inadequacy of the ALJ's decision, while it is favorable to Plaintiff, the ALJ determined that Plaintiff could not lift or carry up to twenty pounds. But, Dr. Lupicki's assessment expressly contradicts that RFC, as well as other state agency physicians. Nowhere in the ALJ's decision is any explanation why the ALJ discounts these medical assessments.

minimum required hours for a sedentary RFC. (A.R. 19.) Accordingly, this Court cannot conclude that substantial evidence supports the ALJ's rejection of Dr. Lupicki's opinion and finding of a sedentary RFC.

Plaintiff further contends that the ALJ improperly omitted Plaintiff's need for a cane in the RFC and in hypothetical questions directed to the VE during the benefits hearing. (Pl. Br. 17 n.6, 20.) As noted above, the ALJ concluded that Plaintiff has the residual functional capacity to perform simple, repetitive, sedentary work with limitations regarding contact with others, and work at heights and around heavy machinery. (A.R. 16.) The RFC determination does not appear to incorporate the fact that Plaintiff requires a cane to ambulate. However, the ALJ does acknowledge that Plaintiff uses a cane for ambulation: "the claimant's use of a cane does not preclude all work activity and its use if reflected in the residual functional capacity." (A.R. 19.)

Although the ALJ acknowledged that "the claimant's use of a cane does not preclude all work activity," the ALJ did not reference Plaintiff's cane use when posing hypothetical questions to the VE. (*Id.*) When "an ALJ poses a hypothetical question to a vocational expert that fails to reflect 'all of a claimant's impairments that are supported by the record[,] ... it cannot be considered substantial evidence.'" *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004) (citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)). Here, because the RFC determination failed to incorporate Plaintiff's use of a cane and the ALJ neglected to raise it separately in his questioning of the VE, it follows that the VE likewise failed to consider Plaintiff's use of a cane in advising the ALJ that jobs in the national economy exist that Plaintiff could perform. Thus, it is unclear whether Plaintiff could perform the jobs the VE identified while using a cane. This failure also renders the ALJ decision unsupported by substantial evidence.

    **B.**    **Plaintiff's Subjective Symptoms**

Second, Plaintiff argues that that there is no evaluation or assessment of Plaintiff's symptoms in the ALJ's decision. (Pl. Br. 21-25.) The ALJ must consider and weigh all non-medical evidence before him, including allegations of pain and other subjective symptoms. *See Burnett*, 220 F.3d at 122. In considering the alleged subjective symptoms, the ALJ will examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case records. SSR 16-3p 2016 WL 1119029, at *2 (S.S.A. 2016); *Williams v. Barnhart*, 211 F. App'x 101, 104 (3d Cir. 2006). Additionally, the ALJ will also consider other evidence, such as daily activities and the location, duration, frequency, and intensity of pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). When considering an individual's allegations alongside the objective medical evidence, an ALJ has the authority to make credibility determinations of a plaintiff's testimony regarding pain and other subjective complaints. *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 765 (3d Cir. 2009) (citing *VanHorn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)). Credibility determinations turn on whether there are inconsistencies in the evidence, and whether there are conflicts between an individual's statements and the rest of the evidence. 20 C.F.R. 404.1529(c)(4).

In this case, the ALJ partially discounted Plaintiff's testimony as to his symptoms and limitations, because the ALJ found that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (A.R. 17.) Moreover, the ALJ added that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent "because the subjective complaints are not fully supported

by the objective medical evidence." (*Id.*) While the Court agrees with Plaintiff that this language appears to be boilerplate, the analysis does not end if the ALJ otherwise explains his credibility determination. *See Alvarez v. Colvin*, No. 12-6205, 2013 WL 6843527, at *7 (D.N.J. Dec. 27, 2013).

Here, in addition to the boilerplate language, the ALJ later explained that Plaintiff has "a limited treatment history." (A.R. 19.) *See* 20 C.F.R. § 416-929(c)(3)(iv)-(vi) (noting treatment history as relevant to the evaluation of the intensity and persistence of symptoms). However, the ALJ failed to adequately address inconsistencies in the record, such as Plaintiff's testimony that he experienced pain on the right side of his back while sitting and findings of positive straight leg raising tests, bilateral leg swelling, and deformity of the right knee by his physicians on the one hand and observations of normal gait and full strength throughout on the other hand. (A.R. 54-55, 1334-36, 1362, 1431.) Accordingly, on remand, the ALJ should explain how he arrived at his determination regarding Plaintiff's subjective statements by specifying reasons for rejecting Plaintiff's allegations of pain and other symptoms and supporting his conclusion with concrete medical evidence in the record.

## IV.   CONCLUSION

For the reasons set forth above, the Court vacates the decision denying benefits and remands this matter for further proceedings.

Dated: January 26, 2022                                     /s/ Freda L. Wolfson
                                                            Hon. Freda L. Wolfson
                                                            U.S. Chief District Judge

19